# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | | |
|---|---|---|---|
| KEVIN LEE LANE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:20-CV-102-RLJ-DCP |
| | ) | | |
| ANDERSON COUNTY, TENNESSEE | ) | | |
| and | ) | | |
| SOUTHERN HEALTH PARTNERS, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION

Anderson County, Tennessee ("the County") and Southern Health Partners ("SHP") have each filed motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 38 and 40]. Plaintiff has failed to file a timely response in opposition to the motions, thereby waiving opposition to the relief sought by Defendants. E.D. Tenn. L.R. 7.1; E.D. Tenn. L.R. 7.2. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of

his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff, who has "no teeth," was denied a "soft tray" of food while housed at the Anderson County Detention Facility ("ACDF") [Doc. 1 p. 4]. Trying to eat the normally hard food served by ACDF made Plaintiff's gums sore and caused him to eat less, which in turn caused him to lose weight [*Id.*]. Plaintiff sought dentures and was told his "people" would have to pay for his teeth [*Id.*]. His grievance as to the issue was denied, and he was prevented from appealing it [*Id.*].

Plaintiff also requested treatment for kidney stones and passing blood, but he was denied any treatment or pain medication [*Id.*]. He was also prevented from appealing the denial of his grievance as to this issue [*Id.*].

## III. SUMMARY JUDGMENT EVIDENCE

Plaintiff was arrested and booked into the Anderson County Detention Facility ("ACDF") on December 27, 2019 [Doc. 38-1 p. 2, ¶ 7]. Between March 9, 2020, and August 12, 2020, Plaintiff was serving time for charges in another county [Doc. 38-1 p. 7 ¶ 30]. Plaintiff remained in the ACDF from August 12, 2020, until his release from ACDF on August 25, 2020 [Doc. 38-1 p. 8 ¶ 36]. Plaintiff filed no relevant medical requests or grievance between August 12, 2020 and August 25, 2020 [*Id.*]. Therefore, the Court's analysis is concerned with Plaintiff's incarceration at the ACDF between December 27, 2019 and March 9, 2020.

### A. Medical Care

As part of the intake process at ACDF on December 27, 2019, a standard Inmate Medical Form was completed [Doc. 38-1 p. 2 ¶ 8]. Plaintiff was asked a series of questions and given a physical assessment where he indicated that his sole medical issue was kidney stones [*Id.*]. Three

3

days later, a SHP nurse completed Plaintiff's intake history and physical assessment, where he again stated that his only medical condition was kidney stones [Doc. 38-1 p. 2 ¶8 , 11].

The following day, on December 28, 2019, Plaintiff filed a medical request seeking "something for pain" due to his kidney stones [*Id*. at 15]. On December 29, 2019, Plaintiff filed a grievance advising that he had kidney stones, was in pain, and had requested a nurse four times that day [*Id*. at 16]. On the same day, Plaintiff was evaluated by SHP staff for low back pain, and as a result, medication was ordered and administered for pain [*Id*. at 16-18].

On December 30, 2019, Plaintiff filed another medical request relating to kidney and lower back pain [*Id*. at 19]. The same day, SHP ordered and administered an ultrasound of Plaintiff's kidneys [*Id.* at 16, 20]. SHP also ordered and administered Plaintiff medication [*Id*. at 21-23]. According to the ultrasound report, Plaintiff's kidneys "appear[ed] unremarkable" [*Id*. at 20].

Approximately a week later, on January 7, 2020, Plaintiff filed a medical request providing that he had blood in his urine [*Id*. at 24]. SHP saw Plaintiff the same day and ordered a renal ultrasound of Plaintiff's kidney, ureter, and bladder [*Id*. at 18, 25]. The renal ultrasound was performed on January 9, 2020 and showed a "right renal cystic structure" and "mild left hydronephrosis" [*Id*. at 26]. The following day, on January 10, 2020, SHP ordered Plaintiff to receive a "nephrology consult (renal cystic structure/hematuria)" [*Id*. at 18].

On January 11, 2020, Plaintiff filed an inmate grievance requesting the results of his ultrasound and to be seen by a "real doctor" [*Id*. at 16]. ACDF Officer Amber Allen advised Plaintiff that an outside appointment with a nephrologist had been scheduled [*Id*.].

The next day, on January 12, 2020, Plaintiff filed a medical request asking to see a nurse because he was experiencing kidney and back pain [*Id*. at 27]. In that medical request, Plaintiff acknowledged his specialty appointment but requested that something be done to alleviate his pain in the meantime [*Id*.]. In response, Plaintiff was placed on pain relievers from January 13 through

4

January 20, 2020 [*Id*. at 18, 22]. The following day, January 14, 2020, Plaintiff filed an appeal of January 11 grievance, alleging that he was being denied treatment for pain [*Id*. at 28].

On January 21, 2020, Plaintiff filed a medical request asking for additional pain reliever and was told that he had been "placed on the providers list" [*Id*. at 29]. The next day, Plaintiff made a similar request for medication and asked about his specialty consult [*Id*. at 30]. Plaintiff was told that his appointment was still scheduled and that because he had already been given the protocol of ibuprofen, he would need to order more off commissary [*Id*.].

On January 26, 2020, Plaintiff filed another medical request asking to be seen by a nurse for kidney pain [*Id*. at 31]. The next day, Plaintiff was seen at Tennessee Urology [*Id*. at 6 ¶ 24]. According to the notes written by the doctor on the transport order, "non-obstructing stones unlikely causing pain. Pain much more likely musculoskeletal. Rec. pursue non-urologic causes for pain" [*Id*. at 32.].

On February 2, 2020, Plaintiff filed a medical request complaining of blood in his urine and back and kidney pain [*Id*. at 33]. Plaintiff was seen by SHP on February 4, 2020 [*Id*.].

A few days later, on February 8, 2020, Plaintiff filed a medical request asking to be seen for a sty on his eye and blood in his urine [*Id*. at 34]. Plaintiff was seen by a SHP nurse, and, according to notes written on the medical request, a cup was left for Plaintiff to provide a urine sample [*Id*.]. SHP analyzed Plaintiff's urine on February 11, 2020 [*Id*. at 35].

B. **Dental Care**

When Plaintiff's intake history and physical assessment was performed on December 30, 2019, Plaintiff did not disclose any dental problems or make any dental complaints [*Id*. at 11]. However, on February 19, 2020 — fifty-four days after his initial detention in the ACDF and approximately seven days before he filed this action — Plaintiff filed a medical request asking for

5

a soft tray because he has no teeth [*Id*. at 36]. An SHP nurse responded, advising Plaintiff that soft trays are approved by the dentist after multiple teeth are extracted [*Id*.].

The next day, on February 20, 2020, Plaintiff filed another medical request and stated that he had no teeth and had "been on [a] soft tray before" [*Id*. at 37]. An SHP nurse again responded to Plaintiff that SHP policy was that soft trays are ordered after teeth are removed [*Id*.]. Unhappy with that response, Plaintiff filed a grievance on February 22, 2020, regarding the denial of a soft tray [*Id*. at 38]. The grievance was assigned to medical nurses, and ACDF Officer Allen responded to Plaintiff "soft diet to be started" [*Id*.].

## IV.  DISCUSSION[1]

### A.  Alleged Denial of Medical and Dental Treatment

Both Anderson County and SHP deny that Plaintiff's constitutional right to adequate medical or dental care was abridged. The Court notes that while the government has an "obligation to provide medical care for those whom it is punishing by incarceration," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), that right is not unqualified under the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, the denial of medical treatment to an inmate is actionable under § 1983 only if it violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff

---

[1] Defendants Anderson County and SHP also moved for summary judgment on the basis of Plaintiff's alleged failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") as a precondition to filing the instant action [Docs. 38 and 40]. *See also See* 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (noting PLRA exhaustion requirement is mandatory). Because it is apparent that Defendants are entitled to summary judgment for the reasons stated in the Court's discussion, the Court declines to address this additional ground for relief.

6

Case 3:20-cv-00102-RLJ-DCP   Document 42   Filed 05/05/21   Page 6 of 12   PageID #: 225

to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is established by showing a defendant acted (or failed to act) with a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). This requires an inmate to produce "proof that each defendant subjectively perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (citations and internal quotation marks omitted).

Moreover, where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). In fact, "when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (citation and internal quotation marks omitted). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Westlake*, 537 F.2d at 860 n.5. Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001) (citation omitted).

1. **Medical Claims**

The Court finds that Plaintiff's allegation that he was denied medical care is contradicted by the record. Plaintiff submitted his first medical request relating to kidney stones and pain one day after his intake at the ACDF, and SHP medical staff saw him the following day and provided

7

Case 3:20-cv-00102-RLJ-DCP   Document 42   Filed 05/05/21   Page 7 of 12   PageID #: 226

him with medication [*See* Doc. 38-1 p. 15-18].  When Plaintiff submitted another medical request one day later on December 30, 2019, he was seen by SHP staff, who ordered additional medication and an ultrasound of Plaintiff's kidneys [*Id.* at 16, 19-23].  The ultrasound results did not indicate any problem with Plaintiff's kidneys [*Id.* at 20].

When Plaintiff complained of blood in his urine on January 7, 2020, medical staff saw him the same day and ordered a renal ultrasound, which resulted in SHP staff scheduling for Plaintiff to see a specialist [*Id.* at 15-17].  Plaintiff submitted several additional medical requests while awaiting his appointment with the specialist, and SHP staff responded to each of those requests [*Id.* 18, 22, 24, 27, 28, 29-31].  Then, on January 27, 2020, Plaintiff was evaluated by the specialist, who determined that he had non-obstructing stones that were unlikely to be causing pain [*Id.* at 32].  After that, Plaintiff submitted several other requests relating to kidney complaints, and each request was addressed by medical staff [*Id.* at 33-35].  Additionally, Plaintiff's allegation that he was denied pain medication is blatantly refuted by the competent evidence demonstrating that Plaintiff was prescribed medication for his kidney pain on three separate occasions [*Id.* at 18].

This is a case where Plaintiff believes the care he received was insufficient.  However, an inmate's desire for additional medical treatment does not implicate the Constitution.  *Westlake*, 537 F.2d at 860 n.5.  Here, Plaintiff has failed to present any proof that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (citation omitted).  Accordingly, Plaintiff cannot satisfy the objective component of the deliberate indifference standard as to either Defendant.

The Court further finds that Plaintiff has failed to prove Defendants' subjective indifference.  The same facts that demonstrate Plaintiff's failure to meet the objective prong of the deliberate indifference test also demonstrate his inability to meet the subjective prong — i.e., a

mental state akin to criminal recklessness. Medical staff responded to Plaintiff's requests, provided testing and treatment for his problems, and sent him to a specialist for further evaluation. Accordingly, Plaintiff cannot prove that Defendants consciously exposed him to an excessive risk of serious harm. *Rhinehart*, 894 F.3d at 738-39.[2]

In sum, Plaintiff has failed to demonstrate that either Defendant responded to his medical needs with deliberate indifference.

### 2. Dental Claims

The competent summary judgment evidence demonstrates that Plaintiff waited fifty-four days after his initial intake at ACDF before he made his first medical request for a soft tray [Doc. 38-1 at 36]. Plaintiff received his request for a soft tray on February 22, 2020 [*Id.* at 36-38]. Therefore, overall, the record demonstrates that Plaintiff was denied a soft tray for approximately four days, and that he was not complaining of weight loss or bleeding gums at the time [*See id.*]. Plaintiff has not placed any verifying medical evidence in the record to establish the detrimental effect of any delay in providing him a soft tray, and therefore, he has failed to establish that he was denied a serious dental need by the four-day denial. *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (holding plaintiff must establish through medical evidence that delay in treatment resulted in physical injury).

Plaintiff also claims that he was denied dentures at the ACDF. Although Plaintiff claims that he "was denied dentures after complaining of difficulty eating and losing weight" [Doc. 1 p.

---

[2] Additionally, as to the County specifically, it reasonably relied on the medical judgments made by medical professionals responsible for Plaintiff's care during each of the above-referenced evaluations. *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (holding that because of deference to judgment of trained medical professionals, it is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care") (internal quotation marks and citation omitted).

9

4], he never filed a medical request asking to be seen by a dentist to obtain dentures or to be seen by a medical provider for sore gums, digestive issues, or weight loss [Doc. 38-1 p. 8 ¶ 36]. Neither did Plaintiff file a formal grievance relating to those matters [*Id.*]. Therefore, he cannot establish that either Anderson County or SHP were deliberately indifferent to his need for dentures, as he never reported any such symptoms to staff. Moreover, Plaintiff has not established through medical evidence that failing to provide him dentures resulted in physical injury to him. See *Napier*, 238 F.3d at 742. Therefore, Plaintiff has failed to establish a deliberate indifference to dental needs claim.

### B. Municipal Liability

Plaintiff has failed to establish that he suffered an Eighth Amendment violation, or that Defendants were deliberately indifferent to his needs. Even so, out of an abundance of caution, the Court considers whether, if any fact issue were present as to Plaintiff's allegations, Plaintiff could establish municipal liability against either Defendant.

Entity liability requires proof of a policy or custom. See *Baynes v. Cleland*, 799 F.3d 600, 620-21 (6th Cir. 2015); see also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Therefore, to demonstrate municipal liability against the County, Plaintiff must identify a municipal policy or custom of the County and show of the that his particular injury was incurred due to the execution of that policy. See *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted). Plaintiff's claim against SHP, a private corporation providing medical care to inmates at the ACDF, is assessed with the same municipal-liability standards. See *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1994); see also *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (noting plaintiff seeking to impose liability against

10

private company performing traditional state function "must show that a policy or well-settled custom of the company was the moving force behind the alleged deprivation" of his or her rights) (citation and internal quotation marks omitted).

Therefore, in order to hold either the County or SHP constitutionally liable for failing to provide Plaintiff with necessary medical or dental treatment, Plaintiff would have to present evidence that these entities authorized staff to refuse care to inmates despite the existence of a serious medical need. The written policies and procedures of ACDF, and its contract with SHP, is evidence of these Defendants' intention to arrange for necessary care in compliance with constitutional standards [Doc. 38-1 p. 42-45].

Additionally, Plaintiff has not alleged any facts indicating that any ACDF or SHP employee violated Anderson County or SHP's policies for the treatment of inmates. In fact, the record indicates that Plaintiff was provided multiple opportunities to see medical providers at ACDF for his alleged kidney problems, and Plaintiff was evaluated by SHP following each of his medical requests. He also received his requested relief for a soft tray within four days. Therefore, Plaintiff has made no showing that these Defendants had a custom or policy of denying medical or dental care to inmates, and Defendants are entitled to summary judgment.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment [Docs. 38 and 40] will be **GRANTED**, and Plaintiff's complaint will be **DISMISSED WITH PREJUDICE**.

The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. See 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/ Leon Jordan
United States District Judge

Case 3:20-cv-00102-RLJ-DCP   Document 42   Filed 05/05/21   Page 12 of 12   PageID #: 231